# UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
*Abingdon Division*

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| CARLOS DAVID CARO, ) | Case No. 1:06-cr-00001 |
|    Defendant ) | |
| ) | |
| ) | |
| ) | |

In this capital case, all dispositive pretrial motions were referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b)(1) for recommended disposition. In addition to a motion to suppress, (Docket Item No. 95), the defendant has filed the following dispositive motions: a motion to strike duplicative and other inapplicable aggravating factors from the government's notice of intent to seek the death penalty, (Docket Item No. 109), a motion to hold that lethal injection is cruel and unusual punishment, (Docket Item No. 110), a motion to declare 18 U.S.C. § 3593 unconstitutional, (Docket Item No. 112), and a motion to dismiss the government's notice of intent to seek the death penalty, (Docket Item No. 123) (collectively, "the Defendant's Motions"). These matters were heard before the undersigned on May 24, 2006. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Criminal Procedure 59(b)(1), the undersigned now submits the following report and recommended disposition.

*I. Defendant's Motion to Suppress*

-1-

The defendant has moved to suppress inculpatory statements he made after the alleged offense to BOP correctional officer Jose Castillo and to Federal Bureau of Investigation Special Agent Doug Fender. The defendant argues that these statements should be suppressed because they were the result of custodial interrogations in violation of the defendant's Fifth Amendment rights as set out in *Miranda v. Arizona*, 384 U.S. 436 (1966).

The United States Supreme Court has held that the Constitution requires that certain warnings be given to a person before he may be interrogated while in custody. *See Dickerson v. U.S.*, 530 U.S. 428, 444 (2000). These so-called "*Miranda* warnings" or "*Miranda* rights" include:

> [T]hat he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

*Miranda*, 384 U.S. at 444. The Court has further held that, if such warnings are not provided, a defendant's statements resulting from a custodial interrogation may not be used in the prosecution's case in chief. *See Dickerson*, 530 U.S. at 443-44. Once advised of these rights, however, a person is free to waive these rights and voluntarily submit to interrogation. Also, "waiver of the right to counsel and the right not to incriminate oneself need not be explicit, but may be inferred from all of the circumstances." *U.S. v. Hicks*, 748 F.2d 854, 859 (4th Cir. 1984).

As recited by the Fourth Circuit in *U.S. v. Payne*, 954 F.2d 199, 201 (4th Cir. 1992), the safeguards of *Miranda* come into play only when a suspect is subject to

"custodial interrogation." While the Fourth Circuit has held that prison or jail inmates are not always in "custody" within the meaning of *Miranda, see U.S. v. Conley*, 779 F.2d 970, 973 (4th Cir. 1985); *see also Cervantes v. Walker*, 589 F.2d 424 (9th Cir. 1978), the government here is not challenging the defendant's assertion that, as a federal prisoner, he was in custody at the time of these statements.[1] Instead, the government asserts that the defendant's statements to Castillo, although made before he was advised of his *Miranda* rights, are admissible because they were voluntary, spontaneous statements not made in response to interrogation. *See Rhode Island v. Innis*, 446 U.S. 291, 300 (1980); *U.S. v. Wright*, 991 F.2d 1182, 1186 (4th Cir. 1993). The government further asserts that the defendant's statements to Fender are admissible because they were made after the defendant was advised of his *Miranda* rights and voluntarily waived those rights.

With regard to the defendant's statements to Castillo, Castillo appeared before the court and testified that after the defendant's special housing unit cellmate, Roberto

---

[1] In general, the test for determining whether an individual is "in custody" for *Miranda* purposes is whether, under the totality of the circumstances, the "suspect's freedom of action is curtailed to a degree associated with formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). But as the Fourth Circuit recognized in *Conley*, "[p]risoner interrogation simply does not lend itself easily to analysis under the traditional formulations of the *Miranda* rule." 779 F.2d at 973. In *Conley*, the Fourth Circuit held that, when considering the interrogation of a prisoner, a court should look to the facts and circumstances of the interrogation "to determine whether the inmate was subjected to more than the usual restraint on a prisoner's liberty to depart." 779 F.2d at 973. In making this determination, a court should consider the language or means used to summon the prisoner to the interrogation, the prisoner's freedom to leave the scene of the interrogation, the purpose, place and length of the interrogation, any added imposition on the prisoner's freedom of movement and whether circumstances suggest any measure of compulsion above and beyond confinement. *See U.S. v. Menzer*, 29 F.3d 1223, 1232 (7th Cir. 1994); *Garcia v. Singletary*, 13 F.3d 1487 (11th Cir. 1994). As stated above, this analysis is not necessary in this case, however, because the government is not challenging the defendant's assertion that he was in custody.

-3-

Sandoval Jr., was found dead in their cell at the United States Penitentiary Lee County, ("U.S.P. Lee"), on the evening of December 17, 2003, the defendant was placed in a holding cell. When Castillo came to work at approximately 11:30 p.m. on December 17, 2003, he was informed of Sandoval's death and told to report to the special housing unit to see if he could assist during the investigation. Once at the special housing unit, Castillo was assigned to monitor a video camera that was videotaping the defendant while he was housed in the holding cell. Castillo stated that he was fluent in both English and Spanish. Castillo also stated that he was aware that the defendant spoke and understood both English and Spanish. Castillo testified that prior to the defendant's statements, he had asked no questions of, nor had he made any statements to, the defendant. Castillo stated that, while he was observing the defendant, the defendant made a statement in Spanish which implicated himself in Sandoval's death.[2] Based on this evidence, I find that the defendant's statements to Castillo were voluntary statements not made in response to any type of interrogation. Therefore, I recommend that the court deny the defendant's motion to suppress these statements.

I also recommend that the court deny the defendant's motion to suppress the statements he made in response to questioning by FBI Special Agent Fender. Fender testified that at approximately 12:20 a.m. on the morning of December 18, 2003, the defendant was brought to an interview room on the special housing unit, where Fender, Castillo and U.S.P. Lee employees Bill Johnson and Larry Shutts were

---

[2]The exact statement uttered by the defendant is at issue. Castillo testified to one statement, but then admitted in cross-examination that he had stated that the defendant had made a different statement on another occasion. He further admitted that a review of the videotape showed that the defendant actually made a third different statement.

-4-

present. Fender testified that he advised the defendant of his *Miranda* rights by reading out loud the "Your Rights" section of an "Advice of Rights" form, (Government's Exhibit 1). Fender stated that both he and the defendant spoke in English during this conversation. Fender stated that the defendant indicated that he wished to waive his rights and speak with him regarding Sandoval's death. The defendant indicated this by executing the "Waiver of Rights" section of the "Advice of Rights" form. Fender stated that, after the defendant executed the form, he told the defendant that he was free to terminate the interview at any time. Fender stated that he then asked the defendant if he had killed Sandoval. The defendant spoke with Fender for a total of six minutes and, during this time, the defendant admitted to killing Sandoval. After six minutes, the defendant stated that he did not wish for the interview to continue, and the interview was terminated.

Based on this evidence, I find the defendant knowingly and voluntarily waived his *Miranda* rights and spoke with Fender. That being the case, I recommend that the court deny defendant's motion to suppress his statements made to Fender.

## II. Motions To Dismiss The Government's Notice Of Intent To Seek The Death Penalty

The defendant has filed two motions seeking to dismiss the government's notice of intent to seek the death penalty. One of those motions asks the court to dismiss the notice because the method used to carry out the death penalty, lethal injection, is cruel and unusual punishment. (Docket Item No. 110). The other motion asks the court to dismiss the notice because the Act is unconstitutional. (Docket Item No. 123).

## A. Cruel and Unusual Punishment Challenge

The defendant argues that the penalty of lethal injection constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. This same argument was raised and addressed by Judge Jones recently in *Bell v. True*, 413 F. Supp. 2d 657, 737 (W.D. Va. 2006), a habeas case. In that case, Judge Jones noted:

> ... [T]hirty-seven states and the federal government authorize execution by lethal injection, and I am aware of no court decision, federal or state, that has found execution by lethal injection unconstitutional. *See Reid v. Johnson*, 333 F. Supp. 2d 543, 552 (E.D. Va. 2004) (citing *Cooper v. Rimmer*, 379 F.3d 1029, 1033 (9th Cir. 2004)). Indeed, the several state and federal courts that have considered the issue have concluded that lethal injection is constitutional. *See, e.g., LaGrand v. Lewis*, 883 F. Supp. 469, 470-71 (D. Ariz. 1995) (finding lethal injection constitutional and citing several other cases that have so held), *aff'd,* 133 F.3d 1253 (9th Cir. 1998). ...

As Judge Henry Hudson of the Eastern District of Virginia noted in *Reid*:

> [I]n order to ultimately demonstrate a violation of ... rights under the Eighth Amendment, [a defendant] must show that there is a substantial risk that he will be subjected to "an unnecessary and wanton infliction of pain," *Wilson v. Seiter*, 501 U.S. 294, 298 ... (1991), "contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 36 ... (1993). ... "Traditional deaths by execution, such as by hanging, have always involved the possibility of pain and terror for the convicted person." *Gray v. Lucas*, 710 F.2d 1048, 1061 (5th Cir. 1983) (rejecting claim that death by cyanide gas which could last seven minutes and be extremely painful, violated the Eighth Amendment); *see also Campbell v. Wood*, 18 F.3d 662, 683-87 (9th Cir. 1994) (holding that death by hanging is not cruel and unusual even if it involved some pain).

333 F. Supp. 2d at 553.

In *Bell*, Judge Jones recognized: "Death by execution has always involved the possibility of pain and terror, and ... our evolving standard of decency may at times require reassessment as to what degree or length is tolerable...." 413 F. Supp. 2d at 737. It does not appear, however, that such an assessment is proper in this case at this time.

As the government argues, the Fourth Circuit Court of Appeals has held that "challenges to the execution of a federal sentence are properly brought under 28 U.S.C.A. § 2241." *U.S. v. Little*, 392 F.3d 671, 679 (4th Cir. 2004). Furthermore, challenging the execution of a sentence on the basis of an alleged constitutional violation does not remove it from review under § 2241. *See Little*, 392 F.3d at 679. Moreover, Caro's trial has not yet been held. Thus, Caro has not yet been convicted, much less sentenced. That being the case, any challenge to the constitutionality of a possible sentence that might be imposed in the future simply is not ripe at this time.

The basic rationale of the ripeness doctrine is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). Claims based on "contingent future events that may not occur as anticipated, or indeed may not occur at all" are not ripe for decision. 13A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3532 (1984). Based on the above, I find that it would be inappropriate for this court to entertain this

issue at this time. Therefore, I recommend that the court deny the defendant's motion to strike the government's notice of intent to seek the death penalty on this basis.

## B. *Constitutional Challenge to the Act*

The defendant further argues that the government's notice of intent to seek the death penalty should be dismissed because the Act is unconstitutional. In particular, the defendant argues that the Act is unconstitutional because it violates the indictment and due process clauses of the Fifth Amendment in that it requires prosecutors, rather than grand jurors, to charge the aggravating factors of a capital offense. The defendant also argues that the Act is unconstitutional because the relaxed evidentiary standards of the penalty phase permit unreliable findings that may result in a sentence of death. The defendant further argues that the Act is unconstitutional because the death penalty in all cases is cruel and unusual punishment in violation of the Eighth Amendment.

With regard to the last argument, the Supreme Court, as recently as last year, reaffirmed that the death penalty is appropriate when limited to "those offenders who commit 'a narrow category of the most serious crimes' and whose extreme culpability makes them 'the most deserving of execution.'" *Roper v. Simmons*, 543 U.S. 551, 568 (2005) (quoting *Atkins v. Virginia*, 536 U.S. 304, 319 (2002)); *see also McKleskey v. Kemp*, 481 U.S. 279, 300-03 (1987); *Gregg v. Georgia*, 428 U.S. 153, 168-87 (1976). Thus, I recommend that the court reject this argument.

With regard to the defendant's argument that the Act violates the indictment and due process clauses of the Fifth Amendment, I note that Judge Jones has

-8-

considered and rejected a similar challenge to the almost identical death penalty scheme set forth in 21 U.S.C. § 848. *See U.S. v. Church*, 218 F. Supp. 2d 813, 814-15 (W.D. Va. 2002); *U.S. v. Church*, No. 1:00cr00104, 2002 WL 229700 (W.D. Va. Feb. 11, 2002); *U.S. v. Church*, No. 1:00cr00104, 2001 WL 1661706 (W.D. Va. Dec. 27, 2001). In *Church*, the government had given notice, under 21 U.S.C. § 848(h), that it intended to seek the death penalty if the defendant were found guilty of the intentional killing of three family members in furtherance of a continuing criminal enterprise. Just as argued in this case, Church's counsel argued that the death penalty statute at issue in that case, 21 U.S.C. § 848, did not require grand jury involvement in the death penalty charging process and that only Congress could act to cure the constitutional defect. *See Church,* 218 F. Supp. 2d at 814. Prior to trial, the government sought and obtained a superseding indictment from a grand jury containing the statutory aggravating factors that it alleged made the defendant eligible for the death penalty.

Despite the defendant's arguments to the contrary, Judge Jones recognized in *Church* that the Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002), did not address the issue of whether the indictment clause of the Fifth Amendment requires death penalty aggravating factors to be included in the indictment. *See* 218 F. Supp. 2d at 814; *but see U.S. v. Higgs*, 353 F.3d 281, 298 (4th Cir. 2003) ("those intent and aggravating factor which the government intends to rely upon to render a defendant death-eligible under the [Act] are the functional equivalent of elements of the capital offenses and must be charged in the indictment...."); *U.S. v. Allen*, 357 F.3d 745 (8th Cir. 2004) (upon remand from Supreme Court in light of ruling in *Ring*, Eighth Circuit held that, where statutory aggravating factor operated as an element of

-9-

death penalty offense, it be must charged in the indictment). In considering the argument in *Church*, Judge Jones wrote:

> Even assuming, however, that a grand jury indictment charging the death eligibility aggravating factors is now necessary, I disagree with the defendant's position that the death penalty statute as presently written is unconstitutional.
> It is true that § 848 does not expressly provide for grand jury involvement in the death charging process. But nothing in the statute is inconsistent with such a role for the grand jury. I must indulge "every reasonable construction ... in order to save a statute from unconstitutionality." *Hooper v. California*, 155 U.S. 648, 657 ... (1895). I cannot assume that Congress intended to forbid the grand jury from making the findings contained in the present indictment.
> ...
> The role of the grand jury is largely undefined in federal statutory law. No statute or rule of procedure restricts the ability of a grand jury to make the findings that it did in this case. It would be unwarranted to hold that the death penalty statute by implication circumscribed the authority of the grand jury to determine that the defendant was eligible for the death penalty by virtue of the circumstances of his case.

218 F. Supp. 2d at 815. As in *Church*, the government sought and obtained an indictment in this case which contains each of the statutory aggravating factors it alleges makes the defendant eligible for imposition of the death penalty. That being the case, and for the reasons stated by Judge Jones in *Church*, I recommend that the court reject this argument. *See U. S. v. Foster*, 2004 WL 225084 at *1 (D. Md. Jan. 27, 2004).

The defendant also argues that the Act is unconstitutional because the relaxed evidentiary standards of the penalty phase permit unreliable findings that may result

-10-

in a sentence of death. In particular, the defendant argues that the Act impermissibly provides for one hearing where the evidence of elements of the capital offense, known as the statutory intent factors, found in 18 U.S.C. § 3591(a)(2), and the statutory aggravating factors, found in 18 U.S.C. § 3592(c), are presented along with other "information" relevant to the sentence, which is admissible regardless of its admissibility under the Federal Rules of Evidence unless its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues or misleading the jury. *See* 18 U.S.C.A. § 3593(c).

It appears that every court to consider this argument, except for one, has rejected it. *See, e.g., U.S. v. Lee*, 374 F.3d 637, 648 (8th Cir. 2004); *U.S. v. Sampson*, 332 F. Supp. 2d 325, 340-41 (D. Conn. 2004); *U.S. v. Le*, 327 F. Supp. 2d 601, 606-08 (E.D. Va. 2004); *U.S. v. Perez*, 2004 WL 935260 at *2 n. 2; *U.S. v. Haynes,* 269 F. Supp. 2d 970, 984-85 (W.D. Tenn. 2003); *U.S. v. Matthews*, 246 F. Supp. 2d 137, 141-46 (N.D. N.Y. 2002); *U.S. v. Lentz*, 225 F. Supp. 2d 672, 682-84 (E.D. Va. 2002); *U.S. v. Regan*, 221 F. Supp 2d 672, 681-83 (E.D. Va. 2002); *U.S. v. Johnson*, 239 F. Supp. 2d 924, 945 (N. D. Iowa 2003); *U.S. v. Llera Plaza*, 179 F. Supp. 2d 444, 452-53 (E.D. Pa. 2001)*; U.S. v. Minerd*, 176 F. Supp. 2d 424, 435-36 (W.D. Pa. 2001); *U.S. v. Cooper*, 91 F. Supp. 2d 90, 97-98 (D. D.C. 2000); *but see U.S. v. Fell*, 217 F. Supp. 2d 469 (D. Vt. 2002), *rev'd,* 360 F.3d 135 (2d Cir 2004). Furthermore, it appears that the court's previous ruling granting the defendant's motion to separate the defendant's trial into three separate phases, makes this argument moot. Therefore, I recommend the court reject this argument and deny the motion.

### III. Motion To Strike Duplicative And Other Inapplicable Aggravating Factors

-11-

The defendant also has moved for the court to enter an order striking duplicative and other inapplicable aggravating factors from the government's notice of intent to seek the death penalty. (Docket Item No. 109.) In particular, the defendant argues that the government may charge only one of the so-called statutory intent factors found in 18 U.S.C. § 3591(a)(2). The defendant argues that the intent factor found in 18 U.S.C. § 3591(a)(2)(A) – that the defendant intentionally killed the victim – "necessarily subsumes" the three other factors – intentionally inflicted serious bodily injury that resulted in death, intentionally participated in an act contemplating that the life of a person would be taken and intentionally and specifically engaged in an act of violence, knowing that the act created grave risk of death to the victim. *See* 18 U.S.C.A. § 3591(a)(2)(A)-(D) (West 2000).

In *U.S. v. Tipton*, 90 F.3d 861 (4th Cir. 1996), the Fourth Circuit considered a similar argument regarding four identical aggravating intent factors found in 21 U.S.C. § 848(n)(1). In *Tipton*, the Fourth Circuit held that, although the jury is permitted to select only one of the four listed intent factors as its basis for the necessary aggravating factor, the government was not precluded from submitting evidence on each of these four factors to the jury. *See* 90 F.3d at 899-900; *see also U.S. v. Beckford*, 968 F. Supp. 1080, 1084, 1089 (E.D. Va. 1997).

The defendant also argues that two of the statutory aggravating factors listed by the government are duplicative. In particular, the defendant argues that the government seeks to impose the death penalty based on the defendant having been previously convicted of two state or federal offenses punishable by a term of

-12-

imprisonment of more than one year, committed on different occasions, involving the distribution of a controlled substance, 18 U.S.C. § 3592(c)(10), and having been previously convicted of violating Title II or Title III of the Comprehensive Drug Abuse Prevention and Control Act of 1970 for which a sentence of five or more years may be imposed, 18 U.S.C. § 3592(c)(12). The defendant argues that one or the other of these aggravating factors should be dismissed from the government's notice because the same convictions will serve as proof of each factor. *See Randolph v. State*, 463 So.2d 186, 193 (Fla. 1984).

In response, the government argues that none of the factors are duplicative because no two factors entirely replicate each other. *See U.S. v. Kaczynski*, 1997 WL 716487 *27 (E.D. Cal. 1997). The government argues that the statutory aggravating factors listed are not duplicative of each other because 18 U.S.C. § 3592(c)(10) addresses recidivist drug trafficking activity while 18 U.S.C. § 3592(c)(12) addresses engaging in serious drug trafficking crime on even a single occasion. I agree. That being the case, the government should not be precluded from attempting to prove each of these aggravating factors simply because the same evidence may be used to prove both of them.

The defendant also argues that the court should dismiss each of the additional statutory and nonstatutory aggravating factors alleged in the notice. The defendant argues that the court should dismiss the statutory aggravating factor that the defendant committed the offense after substantial planning and premeditation because the government has not provided the defendant specific notice of the evidence which it intends to offer on this issue. The defendant also argues that the court should dismiss

-13-

the nonstatutory aggravating factor of future dangerousness because the government has listed three subfactors or categories of evidence it intends to offer to prove this factor. In essence, the defendant argues that providing the defendant with notice of the evidence it intends to offer on this issue prejudices the defendant and will confuse the jury. Thus, on one hand, the defendant argues that an aggravating factor should be dismissed because the government has not provided notice of the evidence it intends to produce to prove the factor, while, on the other hand, the defendant argues that an aggravating factor should be dismissed because the government has provided notice of the evidence it intends to produce to prove the factor. Simply put, the defendant cannot have it both ways. In fact, the government is not required to explain what conduct constituted each of the nonstatutory factors the government intends to prove. *See U.S. v. Taylor*, 316 F. Supp. 2d 730 (N.D. Ind. 2004); *see also Minerd*, 176 F. Supp. 2d at 448-49.

The defendant also argues that the court should not allow the government to prove future dangerousness by showing a lack of remorse. It is true that the government must present more than mere silence on the part of the defendant or otherwise the defendant's constitutional right to remain silent would be prejudiced. *See Cooper*, 91 F. Supp. 2d at 112-13; *U.S. v. Nguyen*, 928 F. Supp. 1525, 1543 (D. Kan. 1996). The government argues that it will prove the defendant's lack of remorse by his actions and statements, not by mere silence. If so, the defendant's argument has no merit.

Based on the above-stated reasons, I find that none of the aggravating factors listed in the government's notice of intent to seek the death penalty are duplicative or

inapplicable. Therefore, I recommend that the court deny the defendant's motion to strike duplicative and other inapplicable aggravating factors from the government's notice of intent to seek the death penalty.

### *IV. Motion To Declare 18 U.S.C. § 3593 Unconstitutional Because It Gives The Government The Power To Compel The Accused To Be Sentenced By A Jury*

The defendant argues that the Act violates the Fifth and Eighth Amendments in that it gives the government the power to compel him to be sentenced by a jury against his will. Section 3593(b) provides for sentencing by the court alone "upon the motion of the defendant and with the approval of the ... government." 18 U.S.C.A. § 3593(b)(3) (West 2000). Federal Rule of Criminal Procedure 23(a) requires that a defendant who is entitled to a trial by jury must be tried by a jury unless the defendant waives his right, the government consents and the court approves. The Supreme Court has held Rule 23(a) is constitutional. *See Singer v. U.S.,* 380 U.S. 24 (1965). In fact, the Supreme Court in *Singer* specifically rejected the argument that compelling the defendant to undergo a jury trial against his will violated the defendant's right to a fair trial or due process. *See* 380 U.S. at 36; *see also U.S. v. Van Metre*, 150 F.3d 339, 353 (4th Cir. 1998).

It appears, however, that the defendant's motion on this issue may be premature, in that he has not filed any written waiver of his right to be tried or sentenced by a jury. *See Llera Plaza*, 179 F. Supp. 2d at 461. Furthermore, it appears that every court to have addressed the specific issue raised in this case has held that § 3593(b)(3) is constitutional. *See*, e.g., *Minerd*, 176 F. Supp. 2d at 442; *Cooper*, 91 F. Supp. 2d at 102-03; *Foster*, 2004 WL 225084 at *2; *see also Llera Plaza*, 179 F.

-15-

Supp. 2d at 461 n. 13; *U.S. v. Spivey*, 958 F. Supp. 1523, 1529 (D. N.M. 1997) (upholding constitutionality of similar provision under 21 U.S.C. § 848(i)(1)(c)); *U.S. v. Cooper,* 754 F. Supp. 617, 623-24 (N.D. Ill. 1990) (same). For these reasons, I will recommend that the court deny this motion.

## PROPOSED FINDINGS OF FACT

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant's statements to Castillo on the evening of December 17, 2003, were spontaneous, voluntary statements and were not made in response to interrogation;
2. The defendant knowingly and voluntarily waived his *Miranda* rights before speaking with Fender during the early morning hours of December 18, 2003;
3. The defendant's constitutional challenge to the use of lethal injection to execute the death penalty is not ripe;
4. The death penalty does not violate the cruel and unusual punishment clause of the Eighth Amendment;
5. The Act does not violate the due process clause of the Fifth Amendment in that it does not require that the grand jury charge the death penalty aggravating factors;
6. The due process clause of the Fifth Amendment was not violated in this case because the indictment issued by the grand jury

included the death penalty aggravating factors;

7. The defendant's argument that the relaxed evidentiary standards set forth in 18 U.S.C. § 3593(c) are unconstitutional is moot based on the court's decision to separate the defendant's trial into three separate phases;

8. None of the aggravating factors listed in the government's notice of intent to seek the death penalty are duplicative or inapplicable; and

9. The defendant's motion to declare the Act unconstitutional because it violates the Fifth and Eighth Amendments is not ripe.

## RECOMMENDED DISPOSITION

Based upon the above-stated reasons, the undersigned recommends that the court deny the Defendant's Motions.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(c) (West 1993 & Supp. 2005):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is

made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 2nd day of June 2006.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-18-