# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Case No. 1:06cr00001 |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| **CARLOS DAVID CARO,** ) | |
| ) | By: Pamela Meade Sargent |
| Defendant ) | United States Magistrate Judge |
| ) | |

In this capital case, all nondispositive pretrial motions were referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Criminal Procedure 59(a) for decision. This matter is before the undersigned on the defendant's motions to issue subpoenas duces tecum, (Docket Item Nos. 273, 274), motion for release of exculpatory evidence related to the penalty phase, (Docket Item No. 307), and motion for discovery, (Docket Item No. 308) ("the Discovery Motions"). The Discovery Motions request that the following specifically identified information be provided to defense counsel:

> A. Data showing median length of stay, range of length of stay and standard deviation of the distribution of length of stay at Florence ADMAX[1] for all inmates since it was opened in 1994 to the present time;
>
> B. Data showing how many inmates who were admitted to Florence ADMAX in 1994 or 1995 continue to be confined there, broken down by offense conduct that caused them to be transferred to Florence ADMAX;
>
> C. Movement sheets from the central inmate file on every inmate

---

[1] "Florence ADMAX" refers to the Bureau of Prisons, ("BOP"), "administrative maximum" security prison in Florence, Colorado.

who has killed another inmate within the Bureau of Prisons, ("BOP"), within the last 20 years;

D. Investigative reports on all inmate homicides within the BOP within the last 20 years including any "after action reports" indicating any operational or institutional changes in response to each killing and any final memoranda from Special Investigative Services, ("SIS"), to the Warden of each institution regarding each killing;

E. Regarding each inmate involved in an inmate killing within the BOP within the last 20 years, the respective inmate's "Chronological Disciplinary Record" and Inmate History "ADM-REL"[2] and/or movement Sheets within the BOP;

F. Any updates to FLM[3] 5321.1d dated June 6, 1997, regarding Control Unit Programs;

G. Any updates to FLM 5321.1d dated March 14, 1997, regarding General Population and Step-Down Unit Operations at Florence ADMAX;

H. Most current fact card given to official visitors at Florence ADMAX who take a tour or do not take a tour of the facility;

I. Records on any assaultive conduct by an inmate in the "Control Unit" at Florence ADMAX from November 1994 to present date, showing the inmate involved, inmate number of the inmate involved, date of occurrence and description of the conduct and the staff member victim of each assault. Such identifying information is necessary to identify the extent to which assaultive conduct is committed by a specific minority of inmates, or is directed against specific staff members;

J. Names, prison numbers, assignment rationale and tenures of all inmates in the Control Unit at Florence ADMAX since opening in 1994 to present date showing date assigned, the reason assigned and date exiting the Control Unit to lesser security or release from BOP;

K. Names of all correctional officers working on the Control Unit at Florence ADMAX showing date assigned and date left;

---

[2]Counsel has been unable to explain what the term "ADM-REL" means to the court.

[3]Counsel has been unable to identify what the term "FLM" means to the court.

- 2 -

L.  Disciplinary Incident Reports on all inmates in the Control Unit at Florence ADMAX from 1994 to present date showing inmate name, number, date of offense and details of disciplinary incident; and

M.  Correctional Services Significant Incidents Data on levels and frequency of violence at each security level at Florence ADMAX by year from 2001 through 2006.

The government has agreed to make the following information available for review at the United States Attorney's office:

A.  Any updates to FLM 5321.1d dated June 6, 1997, regarding Control Unit Programs;

B.  Any updates to FLM 5321.1d dated March 14, 1997, regarding General Population and Step-Down Unit Operations at Florence ADMAX; and

C.  Most current fact card given to official visitors at Florence ADMAX who take a tour or do not take a tour of the facility.

The government opposes production of the remaining specifically requested documents and information.

In their motion for production of exculpatory evidence, defense counsel also request the court to order the production of the following categories of evidence:

A.  All evidence which might tend to diminish the credibility of any of the persons that the government intends to call as witnesses at a possible capital sentencing proceeding;

B.  Any statements, written or oral, of any government witnesses which are favorable to the defendant regarding sentencing;

C.  The names and addresses of all potential witnesses who possess any exculpatory evidence regarding sentencing; and

D.  All statements of witnesses which vary in material detail, either

- 3 -

>            internally or with other statements of the same witness, or with
>            statements of other witnesses.

The government has not argued that the defendant is not entitled to this evidence. In fact, the government has not filed any written response to this motion.

This matter also is before the court on the defendant's motion in limine to exclude from evidence an April 15, 2004, letter, (Docket Item No. 301), and defendant's motion to allow allocution before the jury without cross-examination, (Docket Item No. 312). The government has filed responses in opposition to these Motions. Oral argument was presented before the undersigned on these Motions on November 3, 2006.

By Scheduling Order dated January 23, 2006, (Docket Item No. 17), this matter was originally set for trial beginning July 31, 2006. By the terms of this order, all pretrial motions were to be filed by no later than May 1, 2006. This order also required that any response to a pretrial motion should be filed within 14 days of the filing of the motion. By Order dated June 27, 2006, the court continued the trial of this matter to January 22, 2007. (Docket Item No. 206.) By Order dated July 12, 2006, (Docket Item No. 229), the court stated: "[a]ny additional pretrial motions shall be filed with the court by no later than October 15, 2006, *and will be considered by the court only for good cause shown as to why the motions could not have been filed prior to the original pretrial motions deadline.*" (Emphasis added.)

None of the motions filed by the defendant subsequent to May 1, 2006, other than the motion in limine, (Docket Item 301), states any reason to support a finding

of good cause as to why the motion could not have been filed prior to the original pretrial motions deadline. The motion in limine recites that the letter which defense counsel is seeking to exclude from evidence at trial was provided to defense counsel by the government on June 15, 2006, more than a month after the May 1, 2006, pretrial motions deadline. Also, this motion in limine, as well as the motion to allow allocution without cross-examination, could be properly raised at trial and, therefore, should not be considered as "pretrial motions." *See* FED. R. CRIM. P. 12(b)(3). Furthermore, insofar as the defendant's Discovery Motions seek production of exculpatory information or information which must be produced pursuant to Federal Rule of Criminal Procedure 16, the government's obligations exist regardless of any order by the court.

That being the case, I will deny the defendant's motions contained in Docket Item Nos. 273, 274 and 308 based on my finding that these motions were not timely filed and that defense counsel has made no showing of good cause to justify their filing after the court-imposed deadline. I will consider each of the motions contained in Docket Item Nos. 301, 307 and 312.

I will first consider whether the documents and information sought by defense counsel in Document No. 307, the motion for release of exculpatory evidence, seeks disclosure of exculpatory information or information which must be produced pursuant to Federal Rule of Criminal Procedure 16. Rule 16 lists certain information and items that the government must produce upon the defendant's request. Included in this list are any documents that are "material to preparing the defense" and any documents the government intends to use in its case-in-chief at trial. FED. R. CRIM. P.

16(a)(1)(E)(i). At the November 3 hearing, the government represented that it does not intend to use any of the documents sought in the Discovery Motions in its case-in-chief during either the guilt or the penalty phase of this case. Based on this representation, the only remaining basis under Rule 16 on which the court could order production of the documents and information requested is upon a finding that the documents and information are "material to preparing the defense." Defense counsel argue that the documents and information sought is material in that it is exculpatory in that it can be used to refute government claims that Caro would present a danger to other BOP inmates if sentenced to life in prison rather than given the death penalty.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." In *U. S. v. Bagley*, the Supreme Court held that *Brady* "requires disclosure only of evidence that is both favorable and 'material either to guilt or to punishment.'" 473 U.S. 667, 674 (1985). Evidence is "favorable" when it would tend to exculpate the accused or it could be used to impeach government witnesses. *U. S. v. Ellis*, 121 F.3d 908, 914 (1997); *U. S. v. Trevino*, 89 F.3d 187, 189 (1996). "Evidence is 'material' if there is a reasonable probability that it will affect the result of the proceeding." *Trevino*, 89 F.3d at 189. Furthermore, there is a lower threshold of materiality for specifically requested exculpatory material versus where there is only a general request or no request for exculpatory material. *See Chavis v. State of N.C.*, 637 F.2d 213, 223 (4th Cir. 1980). In the case of specifically requested exculpatory material, such material should be disclosed if there is a "reasonable possibility" that the undisclosed evidence would materially affect the verdict. *Chavis*, 637 F.2d at 223.

In support of their argument that the information requested is exculpatory, defense counsel have filed an affidavit by Mark D. Cunningham, Ph.D., (Docket Item No. 316), a clinical and forensic psychologist, who has been retained by defense counsel to offer expert testimony regarding whether BOP security measures and confinement conditions can be applied to Caro to substantially reduce the probability that he will commit any further serious prison violence while incarcerated. Cunningham has stated that the information requested by the defendant is necessary to rebut anticipated government claims in the sentencing phase that assignment to Florence ADMAX is a temporary assignment and that the BOP will be unable to adequately secure Caro within the BOP system regardless of whether he were to be placed in the Control Unit at Florence ADMAX.

The government has opposed providing the specifically requested documents and information on the bases that the information is not relevant, the requests are not specific enough, the information sought is not admissible at trial and that the burden of production would greatly outweigh any probative value. It is important to note that, despite the undersigned's inquiries at the November 3 hearing, the government has produced no evidence through affidavit or otherwise as to its argument that production of the documents and information requested would be burdensome to the BOP. Surprisingly, the government also has not specifically contested the defense assertions that the specific documents and information sought contains exculpatory information, other than its general assertion that the information is not relevant. In particular, the government has not contested defense assertions with regard to the evidence that the government has offered in similar cases and which it anticipates that the government will offer in this case, including evidence that the defendant cannot be securely

maintained in the BOP or that he presents a greater risk of future violence than other inmates involved in inmate killings. In fact, it would appear that through its response to the defendant's motion in limine, (Docket Item No. 327), the government concedes that the government will argue and present evidence that the defendant's future dangerousness to others, even if he is incarcerated, is an aggravating factor warranting imposition of the death penalty. Furthermore, at the November 3 hearing, the government conceded that it intended to argue and present evidence that the defendant cannot be securely maintained within the BOP system. In particular, the government conceded that it would argue and present evidence that an inmate's assignment to the Control Unit at Florence ADMAX is a temporary assignment.

Based on the information before the court, I find that the defendant has made a compelling argument that some of the specific documents and information requested by the defense should be provided by the government as exculpatory information in that it is "material" on the issue of punishment and "favorable" in that it may be used to impeach anticipated government witnesses. Therefore, I will order that the following information be provided by the government to defense counsel:

- A. Data showing median length of stay, range of length of stay and standard deviation of the distribution of length of stay at Florence ADMAX for all inmates since it was opened in 1994 to the present time;
- B. Data showing how many inmates who were admitted to Florence ADMAX in 1994 or 1995 continue to be confined there, broken down by offense conduct that caused them to be transferred to Florence ADMAX;
- C. Movement sheets from the central inmate file on every inmate who has killed another inmate within the BOP within the last 20 years;

- D. Investigative reports on all inmate homicides within the BOP within the last 20 years including any "after action reports" indicating any operational or institutional changes in response to each killing and any final memoranda from SIS to the Warden of each institution regarding each killing;
- E. Regarding each inmate involved in an inmate killing within the BOP within the last 20 years, the respective inmate's "Chronological Disciplinary Record" and Inmate History ADM-REL and/or movement Sheets within the BOP;
- F. Records on any assaultive conduct by an inmate in the "Control Unit" at Florence ADMAX from November 1994 to present date, showing the inmate involved, inmate number of the inmate involved, date of occurrence and description of the conduct and the staff member victim of each assault. Such identifying information is necessary to identify the extent to which assaultive conduct is committed by a specific minority of inmates, or is directed against specific staff members;
- G. Names, prison numbers, assignment rationale and tenures of all inmates in the Control Unit at Florence ADMAX since opening in 1994 to present date showing date assigned, the reason assigned and date exiting the Control Unit to lesser security or release from BOP;
- H. Disciplinary Incident Reports on all inmates in the Control Unit at Florence ADMAX from 1994 to present date showing inmate name, number, date of offense and details of disciplinary incident; and
- I. Correctional Services Significant Incidents Data on levels and frequency of violence at each security level at Florence ADMAX by year from 2001 through 2006.

Based on the fact that the government has not contested its obligation to produce the categories of evidence sought by this motion, I also will order that the government produce the following:

- A. All evidence which might tend to diminish the credibility of any

        of the persons that the government intends to call as witnesses at a possible capital sentencing proceeding;
B.    Any statements, written or oral, of any government witnesses which are favorable to the defendant regarding sentencing;
C.    The names and addresses of all potential witnesses who possess any exculpatory evidence regarding sentencing; and
D.    All statements of witnesses which vary in material detail, either internally or with other statements of the same witness, or with statements of other witnesses.

Regarding the defendant's motion to allow allocution before the jury without cross-examination, (Docket Item No. 312), this court previously has denied such motions in other capital cases. In *U.S. v. Johnson,* 136 F. Supp. 2d 553, 566-68 (W.D. Va. 2001), Judge Norman K. Moon held that the defendant in a capital case has no statutory or constitutional right to allocution before the jury without cross-examination. In *U.S. v. Church,* 2001 WL 1661706, at *2-3 (W.D. Va. Dec. 27, 2001), Judge James P. Jones rejected a similar motion for the reasons set forth in Judge Moon's opinion in *Johnson.* It appears that defense counsel in this case have raised the same arguments as addressed by the court previously in *Johnson* and *Church.* That being the case, I will deny this motion.

I will next address the defendant's motion in limine, (Docket Item No. 301). The defendant has moved the court for entry of an order prohibiting the government from introducing into evidence at trial, in either the guilt or sentencing phase, a letter purportedly written by the defendant to his wife, Yvette Caro, dated April 15, 2004, (Docket Item No. 301, Exhibit 1) ("the Letter"). The Letter states in pertinent part:

      ... I got a morning prayer I read every morning ... do you want to hear it well hear it is just for you.

> My Morning Prayer
> God give me the strength to put up with this place one more day help me keep my temper in check so that I won't kill one of this [sic] f---ing fools. Help me overlook the wrong others do. So I wont [sic] hurt one of this [sic] f---ing rats. Help me to overlook the liars, punks, no good pieces of s---, and all the stupid things they do[.] Help me to keep my mouth shut so I wont [sic] hurt some child molesters f---ing feelings and most of all God give the a--holes on this prison yard the good sense to stay the f--- away from me! Amen.

The government, in its written response to the motion in limine, argues that evidence which tends to show the motive of the defendant, his lack of remorse, his general moral character and his predisposition to commit other crimes is admissible in aggravation. These written arguments address only the government's position that the Letter should be admissible in aggravation at the punishment phase of trial. Nevertheless, at the November 3 hearing, the government's counsel would not stipulate that it would not seek to admit the Letter in the guilt phase as well. In particular, the government argues that the defendant has stated that he killed the victim because the victim made him angry and "disrespected" him. Thus, the defendant argues that the statements in the Letter could be relevant on the issue of motive at the guilt phase.

Defense counsel argue that the Letter should be not be admitted at either the guilt or sentencing phase of trial because it does not contain an express or implied threat against anyone in the present or the future and that it is irrelevant on any probative value it possesses is outweighed by the danger that it will unfairly prejudice the jury.

Based on the arguments and evidence before the court at this time, I believe it would be inappropriate to grant the defendant's motion in limine. If the government's representations with regard to the defendant's statements are correct, the court could find that the statements contained in the Letter are relevant to the issue of motive. That being the case, I will deny the defendant's motion in limine without prejudice to the defendant's right to raise objections to the admission of the Letter at trial.

An appropriate order will be entered.

DATED: November 8, 2006.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE