# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Case No. 1:06CR00001 |
| v. ) | **OPINION** |
| ) | |
| **CARLOS DAVID CARO**, ) | By: James P. Jones |
| ) | Chief United States District Judge |
| Defendant. ) | |

*John L. Brownlee, United States Attorney, and Anthony P. Giorno, Assistant United States Attorney, Roanoke, Virginia, for United States of America; James A. Simmons, Nashville, Tennessee, and Steven J. Kalista, Big Stone Gap, Virginia, for Defendant.*

In this capital case, the jury recommended a death sentence after convicting the defendant Carlos David Caro, a federal inmate, of first degree pre-meditated murder. *See* 18 U.S.C.A. § 1111(a) (West Supp. 2006). This opinion more fully explains the court's decisions regarding contested jury instructions at the penalty phase of the trial.

Following the defendant's conviction for murdering his cellmate, Roberto Sandoval, the trial proceeded to a bifurcated capital sentencing hearing.[1] The jury considered in the first phase whether the defendant was eligible for the death penalty. After the jury concluded that the defendant was death eligible, the sentencing hearing

---

[1] The parties had jointly requested that the sentencing hearing be bifurcated.

proceeded to the second phase, the justification phase, in which the jury ultimately found that a death sentence was justified.

The parties submitted proposed jury instructions for the justification phase of the sentencing hearing. Five distinct issues raised by the proposed instructions were argued and determined by the court. These issues, and the court's reasoning for its decisions, are discussed hereafter.

I. STANDARD OF PROOF FOR
WEIGHING AGGRAVATING
AND MITIGATING FACTORS.

The first issue raised was whether it was appropriate to instruct the jury that the government must prove beyond a reasonable doubt that the aggravating factors sufficiently outweigh the mitigating factors in order to justify the death penalty. The defendant proposed such an instruction, but the government opposed it, arguing that it would be inconsistent with the language and structure of the Federal Death Penalty Act ("FDPA"), 18 U.S.C.A. §§ 3591-3599 (West 2000 & Supp. 2006). I agreed with the government that such an instruction would be improper.

The FDPA provides that in determining whether a death sentence is justified the jury "shall consider whether all the aggravating factor or factors found to exist *sufficiently outweigh* all the mitigating factor or factors found to exist." 18 U.S.C.A.

§ 3593(e) (emphasis added). The statute provides no guidance as to what is meant by "sufficiently outweigh."

The government conceded that it must establish all aggravating factors beyond a reasonable doubt, but asserted that the FDPA does not require the government to prove beyond a reasonable doubt that the aggravating factors sufficiently outweigh the mitigating factors. The government suggested that this court look to the Tenth Circuit and Eighth Circuit pattern jury instructions for guidance. In neither set of pattern instructions is the jury instructed that it must find beyond a reasonable doubt that the aggravating factors sufficiently outweigh the mitigating factors.[2] The

---

[2] The Tenth Circuit pattern jury instruction states in relevant part:

> After completing your findings regarding aggravating and mitigating factors, you must engage in a weighing process to determine whether a sentence of death is justified. In this process, you must consider only those aggravating factors, statutory and non-statutory, that you unanimously found to exist. Each of you must also consider any mitigating factors that you individually found to exist, and you each may consider any mitigating factors found by any of the other jurors. You must determine whether the proven aggravating factor[s] sufficiently outweigh any proven mitigating factor[s] to justify a sentence of death.
>
> The task of weighing aggravating and mitigating factors against each other, or weighing aggravating factors alone if there are no mitigating factors, is not a mechanical process. You should not simply count the number of factors, but consider the particular character of each, which may be given different weight or value by different jurors. What constitutes sufficient

-3-

defendant responded that denying him this reasonable doubt instruction would violate his rights under the Fifth and Eighth Amendments. He cited to a recent Supreme Court decision, *Ring v. Arizona*, 536 U.S. 584, 609 (2002), and argued that "*Ring* would appear to compel the conclusion that a jury must find that the aggravating factor outweighs the mitigating factors, and it must make such a finding beyond a reasonable doubt." (Def.'s Br. 3.)

---

justification for a sentence of death in this case is exclusively left to you. . . .

*Manual of Model Criminal Jury Instructions for the District Courts of the Tenth Circuit* § 3.11 (2005).

The Eighth Circuit pattern jury instruction has similar language:

> The process of aggravating and mitigating factors against each other [or weighing aggravating factors alone, if there are no mitigating factors,] in order to determine the proper punishment is not a mechanical process. . . . If you unanimously conclude that the aggravating factor or factors found to exist sufficiently outweigh any mitigating factor or factors which any of you found to exist to justify a sentence of death, [or in the absence of any mitigating factors, that the aggravating factor or factors alone are sufficient to justify a sentence of death], and that therefore death is the appropriate sentence in this case, you must record your determination that a sentence of death shall be imposed. . . .

*Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit* § 12.11 (2003).

-4-

After reviewing the parties' briefs and considering their oral arguments, I found that the FDPA does not require proof beyond a reasonable doubt that the aggravating factors sufficiently outweigh any mitigating factors. While the Supreme Court has never addressed this issue in the context of the FDPA, it has held in a state death penalty case that "specific standards for balancing aggravating against mitigating circumstances are not constitutionally required." *Zant v. Stephens*, 462 U.S. 862, 875 n.13 (1983). The Court returned to this issue in *Franklin v. Lynaugh* and noted, "[W]e have never held that a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required." 487 U.S. 164, 179 (1988) (plurality opinion).[3]

---

[3] The defendant argued that the continuing validity of *Zant* and *Franklin* is questionable in light of the Court's decisions in *Ring* and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). This argument is unavailing.

The Court held in *Apprendi* that the Sixth Amendment requires that any fact that increases a defendant's sentence beyond the statutory maximum must be presented to a jury and proven beyond a reasonable doubt. 530 U.S. at 490. In *Ring*, the Court applied *Apprendi* to capital sentencing. The main issue in *Ring* was reconciling *Apprendi* with the Court's earlier ruling in *Walton v. Arizona*, 497 U.S. 639 (1990).

*Walton*, like *Ring*, involved a challenge to Arizona's capital sentencing scheme that allowed the trial judge, and not the jury, to determine the existence of aggravating factors that were necessary to impose death. The *Walton* Court reasoned that Arizona's system did not violate the Sixth Amendment because the aggravating factors were not elements of the offense, but rather were mere sentencing factors. In light of *Apprendi*, the Court reconsidered its *Walton* opinion in *Ring* and found that *Walton* and *Apprendi* were irreconcilable. 536 U.S. at 609. The *Ring* Court held, "[W]e overrule *Walton* to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance

-5-

Because *Zant* and *Franklin* were decided before the FDPA was enacted, Congress was on notice that if it wanted a reasonable doubt standard to apply to the weighing process, it needed to specifically so provide. Instead, the plain language of the FDPA suggests that the only burden Congress intended to impose is that the government must prove that the aggravating factors "sufficiently outweigh" any mitigating factors. *See United States v. Sampson*, 335 F. Supp. 2d 166, 237 (D. Mass. 2004) ("The text of the FDPA does not indicate that Congress intended to impose a reasonable doubt requirement on the weighing process.); *United States v. Hammer*, 25 F. Supp. 2d 518, 531 (M.D. Pa. 1998) ("Congress clearly identified the standard [sufficiently outweigh] to be used in the weighing process, and by so doing excluded other standards, specifically the reasonable doubt standard.").[4]

The reasonable doubt standard is used in other provisions of the FDPA, further suggesting that Congress intentionally omitted reasonable doubt from the weighing

---

necessary for imposition of the death penalty." *Id*. In short, while the Court held in *Ring* that its *Apprendi* decision requires that aggravating factors be presented to the jury and be proven beyond a reasonable doubt, the Court never addressed whether a prosecutor must prove that the aggravating factors sufficiently outweigh any mitigating factors beyond a reasonable doubt.

[4] The Eleventh Circuit also addressed the burden of proof in *United States v. Chandler*, 996 F.2d 1073, 1091-1093 (11th Cir. 1993), but there the defendant was sentenced to death under the Anti-Drug Abuse Act of 1988, and not the FDPA. The court held, "[T]he jury need only be instructed that the aggravating factors sufficiently outweigh the mitigating factors . . . . A capital sentencing scheme is constitutional even if it does not require that a specific burden of proof govern the jury's weighing process." *Id*. at 1091.

process. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

Because I found that a reasonable doubt standard is not constitutionally required and that Congress did not intend for such a standard to be used in the weighing process, I rejected the defendant's proposed instruction and instead gave an instruction that closely follows the language of § 3593(e). My instruction stated, "You must determine whether the proven aggravating factors sufficiently outweigh any proven mitigating factors to justify a sentence of death." (Instruction No. 8).

## II. MERCY INSTRUCTION.

The defendant requested that the court give a so-called "mercy instruction," advising the jury that it might consider matters other than the relative weights of the aggravating and mitigating factors in determining whether or not to impose the death penalty. After the parties briefed and argued this issue, I found that such an instruction was inappropriate and refused the defendant's request.

The defendant's proposed mercy instruction was the following:

-7-

> I also remind you, ladies and gentlemen, that whatever findings you make with respect to the aggravating and mitigating factors, you are never required to impose a sentence of death. For example, there may be something about this case or about Carlos David Caro that one or more of you are not able to identify as a special mitigating factor, but that nevertheless creates a reasonable doubt about the need for Carlos David Caro's death. In such a case, the jury should render a decision against a death sentence. *Moreover, even when a sentence of death is fully supported by the evidence, Congress has nevertheless given each of you the discretion to temper justice with mercy. Any one of you is free to decide that a death sentence should not be imposed in this case for any reason that you see fit.* You will not have to explain the reason. Indeed, I am specifically required by law to advise you that you have this broad discretion.

(emphasis added).[5]

The defendant argued that because the phrase "sufficiently outweigh" used in § 3593(e) is never defined, "the jury is free to use its discretion to define 'sufficiently'

---

[5] In support of this instruction, the defendant cited to this court's instruction in a previous capital case, *United States v. Ealy*, No. 1:00CR00104, Penalty Phase Instruction No. 25 (W.D. Va. June 11, 2002). But the defendant's reliance on this instruction is misguided. This *Ealy* instruction was significantly shorter and noticeably different from the defendant's proposed instruction: "I remind you that regardless of the findings you make with respect to the aggravating and mitigating factors, you are never required to impose the death sentence. Any one of you is free to decide, for whatever reason, that a sentence of less than death is the appropriate punishment in this case. You will not have to explain that reason." *Id.* The *Ealy* case was brought under the Anti-Drug Abuse Act of 1988 and not the FDPA.

-8-

Case 1:06-cr-00001-JPJ   Document 696   Filed 04/11/07   Page 8 of 18   Pageid#: 4736

in whatever way the jury believes it should be defined, which does encompass mercy and conveys a highly discretionary and ultimately moral decision." (Def.'s Br. 6.)[6]

The defendant's proposed mercy instruction was improper because it would have told the jury that it could base its determination on factors not specified in the FDPA. In *United States v. Sampson*, the court refused the defendant's mercy instruction request for this reason and stated, "The statute does not identify any other permissible considerations. To permit the jury to consider matters other than the relative weight of aggravating and mitigating factors found during jury deliberations risks the arbitrary and capricious imposition of death sentences based on unspecified criteria." 335 F. Supp. 2d at 239.

---

[6] In response to this court's concerns regarding the proposed mercy instruction, the defendant directed the court to *United States v. Haynes*, 265 F. Supp. 2d 914 (W.D. Tenn. 2003). In *Haynes*, the court considered the defendant's request for an instruction that a jury is never required to recommend death and held that the FDPA does not preclude a judge from giving such an instruction. *Id*. at 915. The court stated, "Indeed, the [c]ourt infers that Congress elected to use the terms 'sufficient' and 'justify' rather than applying traditional burdens such as 'beyond a reasonable doubt' or 'by a preponderance of the evidence' precisely because they wanted to afford juries the opportunity to exercise their discretion not to impose the death penalty regardless of the quantitative weight of the aggravating or mitigating information." *Id*. at 917. The court then held that the jury must first weigh the aggravating and mitigating factors and then decide whether any imbalance is sufficient to justify a sentence of death. *Id*. The *Haynes* court never held, as the defendant implies, that the jury must first weigh the factors, then consider whether any imbalance is sufficient to justify death, and then decide whether to recommend it. Instead, the *Haynes* opinion suggests that once the jury determines whether the imbalance is sufficient to justify death, the jury's decision-making process is complete.

-9-

The Eighth Circuit also addressed the mercy instruction in *United States v. Allen*, 247 F.3d 741, 780-782 (8th Cir. 2001), *vacated and remanded on other grounds,* 536 U.S. 953 (2002). In *Allen,* the defendant wanted the jury to be instructed that it first would decide whether a death sentence was justified and then it would decide whether a death sentence should actually be imposed. *See id.* at 780-781. The Eighth Circuit held that

> Allen's two-decision interpretation of § 3593(e) would allow the jurors to disregard a unanimous determination that a sentence of death is justified. We conclude that such an interpretation contradicts the language of § 3591(a)(2), stating that a defendant *shall* be sentenced to death if the fact finder determines that a sentence of death is justified after weighing the aggravating and mitigating circumstances. . . .We do not read § 3593(e) as requiring from the jury a second, substantive determination regarding a sentence of death once it decides that a sentence of death is indeed justified.

*Id.* at 781.

The defendant is correct that mercy may be incorporated into the jury's decision-making process. The FDPA does not preclude the jury from considering mercy when weighing the aggravating and mitigating factors. "The FDPA merely precludes the jurors from arbitrarily disregarding its unanimous determination that a sentence of death is justified." *Id.* (citing *Johnson v. Texas*, 509 U.S. 350, 371-372 (1993)).

-10-

In short, while I refused to include the defendant's proposed mercy instruction, I did instruct the jury that because weighing aggravating and mitigating factors is not a mechanical process, the jury is never required to impose a sentence of death and that "it is up to you to decide whether, for any proper reason established by the evidence, you choose not to impose such a sentence on the defendant." (Instruction No. 1).

### III. RESIDUAL DOUBT.

The third issue was the appropriateness of an instruction that residual doubt as to the defendant's guilt is a possible mitigating factor. The defendant had requested this instruction, conceding that while the defendant does not have a constitutional right to a residual doubt instruction, such an instruction is not precluded by the FDPA.[7] The government responded that the defendant has neither a constitutional

---

[7] In support of his argument, the defendant requested that this court consider *United States v. Davis,* 132 F. Supp. 2d 455 (E.D. La. 2001). In *Davis*, the court engaged in a lengthy discussion of residual doubt case law and ultimately concluded that, "a residual doubt argument is permissible under 18 U.S.C. § 3592 and must be considered by the jury if offered by the defense." *Id.* at 468 (internal quotations omitted). The court also stated, "Nevertheless, being convicted beyond a reasonable doubt does not mean a person is in fact guilty. Innocent people have been convicted and many, hopefully most, were ultimately exonerated. . . . Capital punishment does not allow for that correction." *Id.* at 467 (internal quotations omitted). This statement implies that the reasonable standard used to determine a defendant's guilt is insufficient in a capital case. Under the system envisioned by the *Davis* court, therefore, a capital defendant is found guilty twice: first in the guilt phase and then if the defendant desires, the jury can revisit his guilt in the sentencing phase. The Supreme Court has never required this two-stage guilt determination and Congress did not so provide in the FDPA. Hence, the *Davis* argument lacks sufficient support.

-11-

nor a statutory right to a residual doubt instruction. I agreed with the government that the defendant was not entitled to this instruction and refused to include it.

The Supreme Court addressed residual doubt as a mitigating factor in *Franklin.* 487 U.S. at 172. The defendant in *Franklin* argued that the Court's decision in *Lockhart v. McCree*, 476 U.S. 162 (1986), entitled him to such an instruction. But after reviewing its previous decisions, a plurality of the *Franklin* Court found to the contrary, "This Court's prior decisions, as we understand them, fail to recognize a constitutional right to have such doubts considered as a mitigating factor." 487 U.S. at 174.

The Court recently reaffirmed in *Oregon v. Guzek*, 126 S. Ct. 1226, 1231-1232 (2006), that it has never held that the Eighth Amendment provides a defendant with the right to present residual doubt evidence at a capital sentencing hearing. The Court, however, stopped short of rejecting all Eighth Amendment residual doubt claims by refusing to decide whether residual doubt evidence is actually

---

In *United States v. Honken*, 378 F. Supp. 2d 1040, 1041 (N.D. Iowa 2004), the court allowed a residual doubt instruction in a capital case arising under the Anti-Drug Abuse Act of 1988. But the court gave no detailed explanation for its decision and instead relied on *Davis* for support: "Therefore, the court adopts the reasoning and analysis in *Davis* as applicable to the death penalty provisions of 21 U.S.C. § 848 and holds that the defendant will be permitted to raise the issue of 'residual doubt' in the presentation of the penalty phase, if any, and that the court will include a 'residual doubt' instruction in the court's penalty-phase instructions to the jury." *Id.*

-12-

unconstitutional. In a concurring opinion, Justice Scalia argued that the Court should have definitively ruled against residual doubt claims and emphasized how skeptical the *Franklin* Court had been about the propriety of residual doubt as a mitigating factor "They [the *Franklin* plurality] were, moreover, quite doubtful that the purported right existed, because it is arguably inconsistent with the common practice of allowing penalty-only trials on remand of cases where a death sentence–but not the underlying conviction–is struck down." *Id*. at 1234, *citing to Franklin*, 487 U.S. at 173, n.6 (internal quotations omitted). Justice Scalia also observed that post-*Franklin*, lower courts have unanimously held that a defendant has no constitutional right to argue residual doubt at sentencing. *Id*.

Because the Court has never found that a defendant has a constitutional right to a residual doubt instruction, any entitlement to this instruction must come from the applicable capital statute. The FDPA provides that "[i]n determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider any mitigating factor." 18 U.S.C.A. § 3592(a). The statute then lists seven mitigating factors. *Id.* at § 3592(a)(1-7). While it is true that this list is not meant to be exhaustive, the absence of residual doubt as a statutory mitigating factor is instructive. The government argued that "Congress at the time the FDPA was enacted, was aware of the holding in *Franklin* that residual doubt is not a

constitutionally required mitigating circumstance and, had it elected to do so, could have included language in the statute expressly authorizing the consideration of residual doubt." (Gov't's Br. 8.)

The FDPA does authorize the admission of non-statutory mitigating factors in addition to the seven statutory mitigating factors. Section 3592(a)(8) provides for the consideration of "[o]ther factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence." But this language suggests that residual doubt is not the type of non-statutory mitigating evidence authorized by Congress, since as the *Franklin* plurality related, "Such lingering doubts are not over any aspect of petitioner's character, record, or a circumstance of the offense." *Franklin*, 487 U.S. at 174 (internal quotations omitted). Because the words of the FDPA suggests that residual doubt is not a proper mitigating factor, I refused the defendant's proffered instruction.

### IV. LIFE WITHOUT THE POSSIBILITY OF RELEASE AS MITIGATOR.

The fourth issue was whether it was appropriate to instruct that life without possibility of release is a mitigating factor that must be considered by the jury as a matter of law. The government opposed such an instruction, arguing that life without

-14-

the possibility of release is not a relevant mitigating factor. The defendant presented in support of such an instruction a list of several cases in which this instruction was given. Ultimately, I decided that life without the possibility of release is not a mitigating factor and did not include this instruction.

The Supreme Court has held that when "a capital defendant's future dangerousness is at issue, and the only sentencing alternative to death available to the jury is life imprisonment without possibility of parole, due process entitles the defendant to inform the jury of [his] parole ineligibility, either by a jury instruction or in arguments by counsel." *Shafer v. South Carolina*, 532 U.S. 36, 39 (2001) (quoting *Ramdass v. Angelone*, 530 U.S. 156, 165 (2000) (plurality opinion)). But, as the government correctly argues, the Court has never mandated that the "life without parole" sentencing option be instructed as a mitigating factor.

While the Fourth Circuit has never directly addressed this issue, the Seventh Circuit has held that life without the possibility of release is not a mitigating factor. *See United States v. Johnson,* 223 F.3d 665, 675 (7th Cir. 2000). The Seventh Circuit stated that

> [a] mitigating factor is a factor arguing against sentencing *this* defendant to death; it is not an argument against the death penalty in general. The argument that life in prison without parole . . . sufficiently achieves the objectives aimed at by the death penalty to make the latter otiose is an argument addressed to legislatures, not to a jury.

*Id.* (internal citations omitted).

I found that like residual doubt, the sentencing option of life without the possibility of release is not related to the "defendant's background, record, or character or any other circumstances of the offense." *See* 18 U.S.C.A. § 3592(a)(8). Indeed, this factor is wholly irrelevant to these considerations.

## V. RESULT OF LACK OF UNANIMITY.

The final jury instruction issue was whether the court should explicitly instruct the jurors that if they could not reach a unanimous decision, the defendant would automatically receive a life sentence without the possibility of release. The defendant had requested such an instruction and pointed to several federal cases in which a similar instruction was given.[8] But after hearing argument on this issue, I decided not to include such an instruction.

The Supreme Court reviewed a district court's failure to give such an instruction in *Jones v. United States* and stated, "[T]he proposed instruction has no bearing on the jury's role in the sentencing process." 527 U.S. 373, 382 (1999). In

---

[8] In the *Sampson* case that has been cited several times in this opinion, Judge Mark Wolf gave such an instruction but in explaining his decision he stated, "The court recognized that the Eighth Amendment does not require that the jury be told the consequences of their failure to agree and that the government has a strong interest in a unanimous verdict—one way or the other—in a death penalty prosecution." 335 F. Supp. 2d. at 240.

-16-

*Jones*, the defendant argued that denying him this instruction would violate the Eighth Amendment because the jury would lack information that might influence a single juror's vote. *See id.* The Court responded, "We have never suggested, for example, that the Eighth Amendment requires a jury be instructed as to the consequences of a breakdown in the deliberative process. On the contrary, we have long been of the view that the very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves." *Id*. (internal quotations and citation omitted).

The *Jones* Court further emphasized that it was reluctant to use its supervisory powers to read in such a requirement when Congress had not chosen to require it when drafting the FDPA, and because of "the strong governmental interest that we have recognized in having the jury render a unanimous sentence recommendation." *Id*. at 383. In explaining its reasoning, the Court quoted from a Virginia Supreme Court case that discussed the inappropriateness of a unanimous vote instruction: "While this [instruction] was a correct statement of law it concerned a procedural matter and was not one which should have been the subject of an instruction. It would have been an open invitation for the jury to avoid its responsibility and to disagree." *Id*. at 383-84 (quoting *Justus v. Commonwealth,* 266 S.E.2d 87, 92 (Va. 1980)).

-17-

In short, in light of the Court's decision in *Jones*, I refused to explicitly instruct the jury regarding the consequences of their failure to agree.

DATED: April 11, 2007

/s/  JAMES P. JONES
Chief United States District Judge